IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Wylie & Sons Landscaping LLC,                    Case No. 3:15 CV 706

                          Plaintiff,             MEMORANDUM OPINION
                                                 AND ORDER
              -vs-
                                                 JUDGE JACK ZOUHARY
FedEx Ground Package System, Inc.,

                          Defendant.


### INTRODUCTION

Defendant FedEx Ground Package System, Inc. moves for summary judgment against Plaintiff Wylie & Sons Landscaping LLC (Doc. 25).  The Motion is fully briefed (Docs. 27, 33, 39).  Wylie & Sons also moves to strike certain evidence which FedEx filed with this Court (Doc. 29).  That too has been fully briefed (Docs. 31, 38).

Wylie & Sons alleges that FedEx engaged in "tortious and wrongful interference" with its business contract and relationship with a third-party (Doc. 1-1 at ¶¶ 11, 14, Count I).  Wylie & Sons claims the interference was done in the "spirit of spite, malicious purpose, and utter hatred," and that this "outrageous and unconscionable" conduct entitles Wylie & Sons to punitive damages (Doc. 1-1 at ¶¶ 16, 18, Count II).

### MOTION TO STRIKE

Wylie & Sons moves to strike portions of various affidavits FedEx filed with this Court.  The Motion objects to public records attached to the affidavits as exhibits, and alleged hearsay statements in the affidavits themselves.

Regarding the public records submitted by FedEx, this Court may take judicial notice of public and government documents because their sources "cannot reasonably be questioned." Federal Evidence Rule 201(b); *see also Colvin v. Veterans Admin. Med. Ctr.*, 390 F. App'x 454, 456 (6th Cir. 2010); *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 655 n.1 (6th Cir. 2005) (taking judicial notice of information posted on a website). Further, Wylie & Sons' objections to the public documents and certain transcripts have been resolved by FedEx's supplement (Doc. 32). Therefore, this Court will take judicial notice of the public documents submitted by FedEx.

As to the affidavits of Kevin Talley, Robert Bilek, and Paul Stritmatter (Docs. 25-3, 25-4, 25-7), this Court finds them admissible. Wylie & Sons contends portions of these affidavits constitute inadmissable hearsay. Hearsay is an out-of-court statement offered "in evidence to prove the truth of the matter asserted." Federal Evidence Rule 801(c). "An out-of-court statement offered to prove something other than the truth of the matter asserted falls outside the definition of hearsay and is admissible." *United States v. Boyd*, 640 F.3d 657, 663–64 (6th Cir. 2011). The affidavits are not hearsay. They provide relevant and probative evidence as to why FedEx believed the owner of Wylie & Sons, Thomas Wylie, Sr., posed a threat to FedEx. (To avoid confusion, this Court refers to Thomas Wylie, Sr., exclusively as "Wylie," and the Plaintiff company as "Wylie & Sons.")

## MOTION FOR SUMMARY JUDGMENT

### BACKGROUND

The following facts are undisputed. Wylie is the principal owner of Wylie & Sons. On June 23, 2012, Wylie's son, Thomas Wylie, Jr., was killed in a motor vehicle accident while driving his truck westbound on Route 24 in Henry County, Ohio. At the same time, Jonathan Shoemaker and Van Adams were driving FedEx tractor trailers in the eastbound lane of Route 24. Wylie, Jr. crossed

the center line, collided with both tractor trailers, and was killed.  *Wylie v. FedEx Ground Package Sys., Inc.*, ___ F. App'x ___, 2016 WL 1381900, at *1 (6th Cir. 2016).

Wylie felt that Adams and FedEx caused the death of his son.  Wylie believed Adams had crossed the center line, was speeding, and had been drinking.  Following his son's death, Wylie threatened Adams repeatedly.  Adams took these threats seriously and, in August 2012, filed for an order of protection in the Allen County (Indiana) Superior Court.  The court entered a protection order against Wylie, finding he was a threat to the safety of Adams and his household.

FedEx corporate security also took the threats seriously.  FedEx investigated Wylie and concluded he was a threat to the company.  Accordingly, the company took steps to protect its facilities and employees.

In July 2014, FedEx selected Rudolph/Libbe, Inc. as its construction manager for a project to expand its Toledo hub.  Soon after, Rudolph/Libbe subcontracted with Wylie & Sons to perform some trucking services on the FedEx project.  The subcontract covered services related to the trucking of stone, as well as on-site trucking services related to the project.  FedEx subsequently learned Wylie's company (Wylie & Sons) could be involved in the expansion project.  As a result of Wylie's past conduct and the FedEx investigation, FedEx was concerned Wylie & Sons' presence on FedEx property posed a serious security risk.

FedEx decided Wylie & Sons should not serve as a subcontractor for the project.  Paul Stritmatter is FedEx's Managing Director of Protection and Preventative Services.  As his title implies, he is responsible for protecting the people and property of the company.  Stritmatter directed the FedEx engineer overseeing the project to request Rudolph/Libbe select a different subcontractor.

3

At this time, construction had not started on the project and Wylie & Sons had not done any work on the expansion.

Stritmatter attested that requiring Rudolph/Libbe to use a different subcontractor was based on FedEx's security concerns.  After FedEx requested a different subcontractor, Rudolph/Libbe chose to use SanJan, Inc. for trucking services.

STANDARD OF REVIEW

Summary judgment is appropriate if there is "no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law."  Federal Civil Rule 56(a).  When considering a motion for summary judgment, the court must draw all inferences from the record in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  It may not weigh the evidence or make credibility judgments.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  But "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Expert Masonry, Inc. v. Boone Cty, Ky.*, 440 F.3d 336, 341 (6th Cir. 2006) (internal quotation marks omitted).

DISCUSSION

**Tortious Interference with Contract**

Wylie & Sons alleges that FedEx intentionally "interfered with the business contract and relationship" it had with Rudolph/Libbe (Doc. 1-1 at ¶ 11).  This Court, exercising its diversity jurisdiction, is bound to apply the law of Ohio.  *Super Sulky, Inc. v. United States Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999); *Menuskin v. Williams*, 145 F.3d 755, 761 (6th Cir. 1998).

4

Ohio law recognizes causes of action for both tortious interference with a business relationship and tortious interference with contract rights. *Super Sulky*, 174 F.3d at 741 (citing *A & B–Abell Elevator Co. v. Columbus/Central Ohio Bldg. & Constr. Trades Council*, 73 Ohio St. 3d 1, 14 (1995)). These actions "differ only in that the former tort does not require proof of a contractual relationship." *Id*. "The torts of interference with business relationships and contract rights generally occur when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another." *Id*.

Tortious interference with contract comprises five elements: "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages." *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St. 3d 415, 419 (1995). A claim for tortious interference also requires showing the defendant's actions were not privileged. *Super Sulky*, 174 F.3d at 742; *A & B–Abell*, 73 Ohio St. 3d at 14. Ohio imposes the burden of proving "lack of privilege" or "improper interference" on the plaintiff. *Super Sulky*, 174 F.3d at 742. The Sixth Circuit has applied the definition of "improper interference" found in Section 767 of the *Restatement (Second) of Torts*. *Id*.

*Kand Medical, Inc. v. Freund Medical Products, Inc.*, 963 F.2d 125, 128 (6th Cir. 1992), sets forth seven factors to consider in deciding whether the alleged conduct was privileged, all of which are drawn from Section 767:

> (1) the nature of the actor's conduct, (2) the actor's motive, (3) the interests of the party with whom the actor has interfered, (4) the interests sought to be advanced by the actor, (5) the social interests of protecting the freedom of contracting and the interference with such, (6) the proximity or remoteness of the actor's conduct to the interference, and (7) the relations between the parties.

5

The first two elements of the claim are not in dispute: There was a contract between Wylie & Sons and Rudolph/Libbe, and FedEx knew of its existence.  But Wylie & Sons' claim stalls on the third and fourth elements, breach and lack of justification.

Interference alone does not give rise to liability -- the interference must be improper.  According to the *Restatement*, improper interference includes conduct such as physical violence, fraudulent misrepresentations, illegal conduct, threats of criminal and civil lawsuits, and economic pressure.  *Restatement (Second) of Torts* § 767 cmt. c.  Here, FedEx requested its construction manager use a different subcontractor because FedEx deemed Wylie and his company a security threat.  The decision was based on security concerns stemming from Wylie's admitted threats to FedEx and its employees.  FedEx's request was limited.  FedEx did not require Rudolph/Libbe to terminate its business relations with Wylie & Sons.  Rather, FedEx only demanded Rudolph/Libbe use a different subcontractor for this expansion project.

FedEx's motives were legitimate.  Stritmatter, who was responsible for the decision, was motivated by his concerns for the safety of FedEx.  FedEx did not receive a financial advantage as a result of this decision.  To the contrary, the new subcontractor cost FedEx an additional $138,000.  And, although Wylie & Sons stood to benefit from the trucking work on the FedEx project, no work had started on the project, nor was there a guarantee, under the terms of the subcontract, what work, if any, Wylie & Sons would eventually perform at the site.

Furthermore, the social interest factor weighs in favor of FedEx.  Compelling a company to permit individuals who have made threats against it to work with the company's employees on the company site is both illogical and irresponsible.  FedEx had a significant interest in the subcontract, which involved FedEx property.  Indeed, as the property owner, FedEx has a right to control who

6

performs work on its own property.  Under the *Kand* factors, FedEx acted in a fair and reasonable manner; its request that Rudolph/Libbe secure a different subcontractor for trucking work on the expansion project was privileged and therefore proper.  *Super Sulky*, 174 F.3d at 742.

Wylie & Sons must also show that FedEx intentionally "procured the contract's breach." *Kenty*, 72 Ohio St. 3d at 419.  But the subcontract, described as a "zero-dollar, unit-price contract," provided that Rudolph/Libbe could use Wylie & Sons as much or as little as it pleased. Rudolph/Libbe was not contractually bound to use Wylie & Sons, but rather only required to pay Wylie & Sons *if* Wylie & Sons actually worked on the FedEx project.  Because Wylie & Sons performed no work on the project, it is not entitled to any compensation.

Critically, the contract gave Rudolph/Libbe the unilateral right to cancel the contract at any time, without cause.  The contract provided (Doc. 25-6 at 18):

> Contractor shall have the right, at any time by written notice to the Subcontractor, to terminate, at Contractor's convenience, without cause the Agreement and require Subcontractor to cease work hereunder.
>
> . . .
>
> In no event shall Subcontractor be entitled to lost or anticipated profits on unperformed Work.

Thus, Rudolph/Libbe's decision was not a breach of the contract; quite the opposite, it was a proper exercise of its rights under the contract terms.  As the Fifth Circuit noted in *C.E. Servs., Inc. v. Control Data Corp.*, 759 F.2d 1241, 1248 (5th Cir. 1985):

> A third-party's efforts to induce another to exercise his right to dissolve a contract at will or to terminate contractual relations on notice does not constitute tortious interference . . . .  Appellant has not produced evidence that its clients "breached" anything -- they merely exercised their respective rights of termination as provided for in their contracts.

Ohio courts have reached the same conclusion. *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St. 3d 171, 179–80 (1999) ("[E]stablishment of the privilege of fair competition, as set forth in Section 768 of the *Restatement*, will defeat a claim of tortious interference with contract where the contract is terminable at will.").

**Tortious Interference with a Business Relationship**

Wylie & Sons also alleges FedEx interfered with its relationship with Rudolph/Libbe (Doc. No. 1-1 at ¶ 11).  This claim does not require proof of a contractual relationship. *Super Sulky*, 174 F.3d at 741.  The tort of interference with a business relationship occurs when a person, without a privilege to do so, induces, or otherwise purposely causes, a third person not to enter into or continue a business relation with another. *Id*.

FedEx did not request Rudolph/Libbe terminate its business relationship with Wylie & Sons. Rather, it requested Rudolph/Libbe not use Wylie & Sons on the FedEx project.  As discussed above, FedEx possessed the privilege to make the request under the terms of the subcontract.  The request was designed to protect its interests from an entity which it felt to be a threat.  The request was limited and privileged.  This claim necessarily fails as well.

CONCLUSION

Plaintiff's Motion to Strike (Doc. 29) is denied; Defendant's Motion for Summary Judgment is granted (Doc. 25); and Plaintiff's Motion for Oral Argument is denied as moot (Doc. 41).

IT IS SO ORDERED.

     *s/ Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

August 23, 2016